# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 127

**OCTOBER TERM, A.D. 2021**

**November 17, 2021**

JORGE OMERO MENDOZA,

**Appellant**
**(Defendant),**

v.

S-21-0060

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*
> Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel.

*Representing Appellee:*
> Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

---

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    A jury found Jorge O. Mendoza guilty of aggravated assault and battery.  He appeals his conviction, arguing that the prosecutor made three statements to the jury that misstated the law and amounted to prejudicial prosecutorial misconduct.  We affirm.

## *ISSUE*

[¶2]    The issue is:

>    Did prosecutorial misconduct prejudice Mr. Mendoza?

## *FACTS*

[¶3]    The State charged Mr. Mendoza with one count of aggravated assault and battery[1] after an incident at a Rawlins restaurant on September 8, 2019.  The case went to a jury trial in September 2020.

[¶4]    The State put on two witnesses.  Richard Oliver, a restaurant employee, testified he was washing dishes that night when Angel Roldan ran into the restaurant claiming a man "was chasing [] him with a knife[.]"  Mr. Oliver looked out the window and saw Mr. Mendoza standing outside the restaurant, looking through the window at Mr. Roldan, running his thumb across his throat with a knife in his hand, "imitating a person's throat being cut[.]" Mr. Oliver called 911.  When the police arrived, Mr. Oliver saw Mr. Mendoza throw the knife on the ground.

[¶5]    Detective Matt Harnisch[2] of the Rawlins Police Department testified that he responded to the call at the restaurant.  He found Mr. Mendoza standing outside the restaurant, with a knife nearby on the ground.  After he and another officer apprehended Mr. Mendoza, Detective Harnisch interviewed Mr. Oliver and Mr. Roldan.  Mr. Roldan told him that he and Mr. Mendoza were at a mutual friend's house earlier that night, where Mr. Roldan was play fighting with another friend when Mr. Mendoza "for an unknown reason kicked him in the face."  Mr. Roldan "pushed Mr. Mendoza down and might have punched him[.]"  Mr. Mendoza then pulled out a knife, and Mr. Roldan fled the house. With the knife in his hand, Mr. Mendoza chased Mr. Roldan out of the house and through a bank parking lot until Mr. Roldan ran into the restaurant asking for help.

[¶6]    Detective Harnisch explained that Mr. Roldan would not give him the address of the friend's house, but based on Detective Harnisch's familiarity with the city, he believed

---

[1] The State also charged Mr. Mendoza with one count of interference with a peace officer and one count of breach of the peace.  These charges were dismissed before trial.
[2] Detective Harnisch was a patrol officer at the time of the incident.

the men must have run at least 300 yards, as that was the approximate distance between the restaurant and the nearest residence across the bank parking lot. Both Mr. Oliver and Detective Harnisch stated that Mr. Roldan appeared out of breath, frantic, and scared.

[¶7] Mr. Mendoza put on three witnesses. Alisa Kalapakdee, a restaurant employee who was working that night, recalled that Mr. Roldan ran into the restaurant and Mr. Oliver called the police, but she did not remember seeing Mr. Mendoza. Anong Larsen, the owner of the restaurant, also recalled Mr. Roldan running into the restaurant, but she was not asked about Mr. Mendoza. Finally, David Smith, a private investigator hired by the defense, testified that he was unable to locate Mr. Roldan for questioning, and that Mr. Mendoza's "memory of the evening was not very good" due to sustaining a concussion. Mr. Smith said he attempted to question a few other witnesses, but he could not locate them.

[¶8] The jury found Mr. Mendoza guilty of aggravated assault and battery. The district court sentenced him to seven to ten years imprisonment with credit for time served.

## *DISCUSSION*

[¶9] Mr. Mendoza was convicted under Wyo. Stat. Ann. § 6-2-502(a)(iii), which provides:

> (a) A person is guilty of aggravated assault and battery if he[:]
>
> (iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another[.]

Wyo. Stat. Ann. § 6-2-502(a)(iii) (LexisNexis 2021).

[¶10] At trial, Mr. Mendoza requested that the jury be instructed on self-defense. Though we have explained that separate self-defense instructions are unnecessary in aggravated assault and battery cases, *see Cooper v. State*, 2014 WY 36, ¶ 41, 319 P.3d 914, 924 (Wyo. 2014) (explaining that the "unless reasonably necessary" language in § 6-2-502(a)(iii) sufficiently "governs self[-]defense in an aggravated assault case involving threatening to use a drawn deadly weapon"); *see also Drennen v. State*, 2013 WY 118, ¶ 41, 311 P.3d 116, 130 (Wyo. 2013) (concluding that § 6-2-502(a)(iii) "is not difficult to understand and generally does not require additional instruction as to what constitutes legally justifiable

2

action"), the court nevertheless instructed the jury as requested, with no objection from the State.[3]

[¶11]  Mr. Mendoza now contends that the prosecutor committed misconduct at trial when she misstated the law of self-defense to the jury three different times.  The statements Mr. Mendoza takes issue with occurred during voir dire, the State's closing argument, and rebuttal.  The prosecutor stated:

> during voir dire: "You have probably all heard the saying, [d]on't bring a knife to a gunfight.  I'm going to flip that around.  You can't bring a gun to a knife fight."[4]

> in her closing argument: "During *voir dire*, I made an analogy of not bringing a knife to a gunfight.  Based on the law that you have just been given, you also can't bring a gun to a fist fight."

---

[3] The court gave the following instructions:

> **Instruction No. 12:**  Before the defendant may be convicted of any crime, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense.

> **Instruction No. 13:**  A person who has reasonable grounds to believe, and actually does believe that he is threatened with an attack that justifies the exercise of the right of self-defense, need not retreat or consider whether he can safely retreat, so long as he does not use deadly force.  He is entitled to stand his ground and use such force as is reasonably necessary under the circumstances to secure himself from the attack.  This law applies even though the assailed person might have been able to gain safety by flight or by withdrawal from the scene.

> **Instruction No. 14:** To justify acting in self-defense, it is not necessary that the danger was real, or that the danger was impending and immediate, so long as the defendant had reasonable cause to believe and did believe these facts.  If these two requirements are met, acting in self-defense is justified even though there is no intention on the part of the other person to do the defendant harm, nor any impending and immediate danger, nor the actual necessity for acting in self-defense.

> **Instruction No. 15:** The right of self-defense exists only as long as the threatened danger would appear to exist to a reasonable person in the defendant's position.  When the danger would no longer appear to exist to a reasonably prudent person, the right to use force in self-defense ends.

[4] Following COVID-19 prevention protocols, the court split the jury panel in half and conducted voir dire in two separate groups.  This statement occurred during the second round of voir dire.  During the first round, the prosecutor asked "[h]as anyone ever heard don't bring a gun to a knife fight?"

in her rebuttal argument: "You cannot bring a knife to a fist fight[.]"

Mr. Mendoza argues that this series of statements inaccurately represented to the jury that a defendant could never claim self-defense if he was armed with a drawn deadly weapon and his opponent was not. He asserts these statements "negated [his] self-defense claim[.]"

[¶12] Mr. Mendoza "bears the burden of establishing prosecutorial misconduct." *Armajo v. State*, 2020 WY 153, ¶ 32, 478 P.3d 184, 193 (Wyo. 2020) (quoting *Bogard v. State*, 2019 WY 96, ¶ 16, 449 P.3d 315, 321 (Wyo. 2019)). Because Mr. Mendoza did not object to these statements at trial, we review for plain error. *Ridinger v. State*, 2021 WY 4, ¶ 32, 478 P.3d 1160, 1168 (Wyo. 2021) (citation omitted). "To satisfy the plain error standard, Mr. [Mendoza] must show (1) the record is clear about the incident alleged as error; (2) a violation of a clear and unequivocal rule of law; and (3) he was denied a substantial right resulting in material prejudice." *Id.* ¶ 33, 478 P.3d at 1168 (citing *Mraz v. State*, 2016 WY 85, ¶ 55, 378 P.3d 280, 293 (Wyo. 2016)).

[¶13] The first requirement of plain error is satisfied because the prosecutor's statements clearly appear in the record. As to the second requirement, Mr. Mendoza "must demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way." *Id.* ¶ 34, 478 P.3d at 1168. Mr. Mendoza contends the prosecutor's statements transgressed the rule that prosecutors may not misstate the law. *See Hill v. State*, 2016 WY 27, ¶ 61, 371 P.3d 553, 569 (Wyo. 2016) ("Even unintentional misstatements of the law are misconduct by a prosecutor." (citation omitted)); *Drennen*, ¶¶ 10–16, 311 P.3d at 121–23 (concluding that clear misstatements of self-defense law met the plain error standard for prosecutorial misconduct). In support of his claim, he relies solely on *Drennen*, which he says involved "the same types of statements[.]" We conclude the statements in *Drennen* are different in substance and effect.

[¶14] Mr. Drennen, who was charged with first degree murder, second degree murder, and aggravated assault and battery, claimed self-defense at trial. *Drennen*, ¶ 8, 311 P.3d at 121. The prosecutors in his case told the jury:

> "[T]here's one general rule that shines through no matter what the scenario is: you do not shoot the unarmed man. You don't do it."

> "And you just do not shoot the unarmed man."

> **"[I]n the state of Wyoming, there is a law against shooting an unarmed man."**

4

"He didn't know the law. He thinks he's justified. He thinks he can shoot and kill someone even though they are unarmed."

*Id.* ¶ 12, 311 P.3d at 122 (emphasis added). Reading these statements in the context of the entire record, we concluded that because "the right to defend oneself in Wyoming, together with the amount and type of force used, depends upon what is reasonably necessary under the circumstances" and "the presence or absence of a weapon is relevant[,] . . . but it is not determinative[,]" "[t]he prosecutors' assertions that Wyoming law prohibits shooting an unarmed man were inaccurate, and the record [left] no doubt that the prosecutors misinformed the jury in that regard." *Id.* ¶ 13, 311 P.3d at 122. We then concluded "the prosecutors' violation of the clear and unequivocal rule of law [prohibiting prosecutors from misstating the law] affected Mr. Drennen's substantial rights." *Id.* ¶ 14, 311 P.3d at 122.

[¶15] The prosecutor in this case did not misstate the law. Read in context, the prosecutor's statements are about proportionality and reasonableness of force.[5] *See Jones v. State*, 2012 WY 82, ¶ 36, 278 P.3d 729, 737 (Wyo. 2012) (considering the propriety of a voir dire statement in context); *Benjamin v. State*, 2011 WY 147, ¶¶ 53–54, 264 P.3d 1,

---

[5] The prosecutor followed up her statement in voir dire with the following explanation:

> Is there anyone who disagrees that a person's reaction to a threat should be equal or proportionate to the threat? Here is what I mean by that. If somebody spits towards your feet, is it okay to shoot them in the face? That is where I am going with proportionality.

In her closing argument, she stated:

> I would like to draw your attention to Jury Instruction Number 13 that the judge has just read for you. There are grounds for self-defense. We discussed during *voir dire* there are times self-defense is appropriate. However, it says he is entitled to stand his ground and use such force as reasonably necessary under the circumstances. Stand his ground. Not chase someone.

And her statement in rebuttal, in context, reads:

> The last one is when it's not reasonably necessary in defense of the person, property or abode or to prevent serious bodily injury to another. There is absolutely nothing in the evidence and facts that shows that any defense was necessary by the defendant. There were no other weapons. They weren't even still in the same place. The defendant chased the alleged victim to another location.
>
> That is not a defense. You cannot bring a knife to a fist fight, and you certainly cannot chase a man down the street.

14 (Wyo. 2011) (reviewing a prosecutor's comments during voir dire in context); *Ridinger*, ¶ 38, 478 P.3d at 1169 (reviewing a prosecutor's closing argument statement in the context of the entire closing argument). The record makes clear she was attempting to explain to the jury that the law did not permit Mr. Mendoza to use more force in self-defense than what was reasonably necessary under the circumstances.

[¶16] Where the deadly weapon to support the aggravated assault and battery charge was a knife, not a gun, the prosecutor could have more clearly explained reasonableness of force without referring to guns and gunfights. But none of her statements, read in context, misstated the law of self-defense. *See infra*, note 5. As the jury was instructed, the law affords Mr. Mendoza a defense of self-defense only if he used "such force as is reasonably necessary under the circumstances[.]" And his right to self-defense existed "only as long as the threatened danger would appear to exist to a reasonable person in [his] position." Thus, Mr. Mendoza has failed to show that the prosecutor violated a clear and unequivocal rule of law in a clear and obvious, not merely arguable, way.

[¶17] Mr. Mendoza has also failed to show how the prosecutor's statements, considered cumulatively, prejudiced him. We have held that a prosecutor's statements necessitate reversal only if their "accumulated effect constitutes prejudice and the conduct of the trial is other than fair and impartial." *Armajo*, ¶ 42, 478 P.3d at 195 (quoting *Bogard*, ¶ 69, 449 P.3d at 332). "[W]e evaluate the possibility of prejudice in the context of the entire record." *Id.* (quoting *Bogard*, ¶ 70, 449 P.3d at 332). The question is whether, when combined, the statements "affected [Mr. Mendoza's] substantial rights such that a reasonable possibility exists that the outcome would have been different had the errors not occurred." *Interest of RR*, 2021 WY 85, ¶ 108 n.15, 492 P.3d 246, 273 n.15 (Wyo. 2021) (quoting *Bogard*, ¶ 71, 449 P.3d at 332).

[¶18] Having reviewed the entire record, we conclude that Mr. Mendoza was not prejudiced by the prosecutor's statements. First, Mr. Mendoza hardly argued self-defense at trial. Rather, his main defenses were that the State conducted a "shotty" investigation, the evidence was speculative, and the State failed to prove that Mr. Mendoza "threatened" Mr. Roldan. In his one reference to self-defense, in his closing argument, he stated:

> Now, the State is referring to the instructions on self-defense, and they referred you to Instruction 13. And in Instruction 13, in the second sentence it says, [h]e is entitled to stand his ground and use such force as is reasonably necessary under the circumstances to secure himself from the attack.
>
> Did you hear any evidence of any force being used in this trial? Was there any evidence that Mr. Mendoza struck Mr. Roldan? Was there any evidence that he tried to attack him? The evidence was consistent. He didn't enter the restaurant. He

was just making a motion with his thumb across his throat. Would that be reasonable if he just suffered a concussion from somebody? Is that reasonable?

But that's all smoke in mirrors because in order to determine whether Mr. Roldan was threatened, we would need to hear from him.

. . . .

It's the State's burden to prove with evidence that Mr. Mendoza threatened Mr. Roldan, and they have not done that here today.

Even this statement seemingly suggested to the jury that self-defense may not apply.

[¶19] Second, to the extent Mr. Mendoza's self-defense claim was before the jury, it was not supported by the evidence. The State's evidence established that Mr. Roldan was play fighting with another friend when Mr. Mendoza inexplicably kicked Mr. Roldan in the face. The two men engaged in a scuffle. Mr. Mendoza then took out a knife and chased Mr. Roldan out of the house, approximately 300 yards across a bank parking lot, and up to a restaurant. When Mr. Roldan ran into the restaurant looking for help, Mr. Mendoza stood outside and made threatening gestures at Mr. Roldan through the window with the knife still in his hand. Mr. Mendoza did not refute this evidence or, in response to the State's evidence, demonstrate that his actions were in any way reasonably necessary to defend his person, property, or abode, or to prevent serious bodily injury to another.

[¶20] Given his self-defense argument was weak, at best, and the record lacks any evidence to support self-defense, we are confident there is no reasonable probability the jury would have decided differently on the issue of self-defense had the prosecutor not made the challenged statements at trial.

[¶21] Affirmed.