# IN THE SUPREME COURT, STATE OF WYOMING

# 2017 WY 48

APRIL TERM, A.D. 2017

*May 8, 2017*

ANTHONY HAIRE,

**Appellant**
**(Defendant),**

**v.**                                                                S-16-0187

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Washakie County*
*The Honorable Robert E. Skar, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Mackenzie Williams, Senior Assistant Attorney General. Argument by Mr. Williams.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant Anthony D. Haire shot and killed a man, but claimed he did so in self-defense.  He was charged with involuntary manslaughter and reckless endangerment, and a jury found him guilty on both counts.  He raises two issues as to the jury instructions on self-defense.  First, he contends that the district court erred in failing to give the jury a requested castle doctrine instruction, which would have said that a person has no duty to retreat in his home even if he could safely do so.  Second, Appellant asserts the district court committed plain error when it gave an instruction informing the jury that he had a duty to retreat before using deadly force.

[¶2]    Before considering Appellant's issues, we must first address whether the justification of self-defense is available when the crime charged involves a reckless act, rather than an intentional act.  We hold that it is, and therefore must overrule our conclusion to the contrary in *Duran v. State*, 990 P.2d 1005 (Wyo. 1999).  While the district court did not abuse its discretion in denying Appellant's proposed castle doctrine instruction, we find that plain error occurred when the jury was instructed that Appellant had a duty to retreat before using deadly force.  We therefore reverse and remand for a new trial on the charge of involuntary manslaughter.

## ISSUES

[¶3]    This Court has raised the first issue on its own initiative because the answer to that question will determine whether it is appropriate to consider the issues Appellant raised.  We have also rephrased the issues to better conform to the applicable standards of review, controlling law, and circumstances of this case:

1.  Is the affirmative defense of self-defense available to a defendant when the crime charged involves a reckless act, rather than an intentional act?

2. Did the district court abuse its discretion when it refused Appellant's proposed jury instruction that there is no duty to retreat in one's home before using deadly force in self-defense?

3.  Did the district court commit plain error when it instructed the jury that Appellant had a duty to retreat before using deadly force in self-defense?

## FACTS

[¶4]    Appellant lived with his wife and three small children in a mobile home in Worland, Wyoming.  Their home was situated on a piece of property owned by Jamye

1

SoRelle.[1]  Mr. SoRelle also lived in a mobile home on the property.  The following rendering sets the scene:



As the diagram depicts, the mobile homes were arranged around a common parking area packed with numerous vehicles and with only a single entrance/exit.

[¶5]    On the evening of April 13, 2015, Appellant was grilling hamburgers in front of his mobile home with his family and a friend, Judy Cable.  Mr. SoRelle came to the cookout for a time, but left abruptly for some reason.  Later that evening, Ms. Cable attempted to leave in her vehicle, but found that she could not because Mr. SoRelle had parked his red Suburban, which was hitched to a trailer, in front of the driveway in and out of the property.  Because she was blocked in, Ms. Cable returned to the Haires' home for assistance.

[¶6]    Appellant walked over to Mr. SoRelle's home and knocked on his door without receiving a response.  Appellant then went back to his place and called Mr. SoRelle.  Mr. SoRelle answered the call and indicated that he was upset that Ms. Cable's car had been parked in his usual parking spot, which is why he blocked it in.

---

[1] Mr. SoRelle was Appellant's wife's stepfather.

[¶7]   After the call, Appellant, his wife, and Ms. Cable went outside.  The Haires' children remained inside their home.  Mr. SoRelle, who was apparently still upset and probably drunk, appeared and walked towards the three.[2]  Appellant noticed that Mr. SoRelle was holding a .41 magnum revolver in his right hand as he approached.

[¶8]   Mr. SoRelle then shot his revolver into the ground near Mrs. Haire and Ms. Cable, who were standing near Appellant.  The bullet's impact caused gravel to fly and hit Mrs. Haire's legs.  Appellant quickly ushered the women back into his home.

[¶9]   Appellant did not follow the women into the home, however.  Instead, he ran to his Hyundai car that was parked nearby to retrieve a semiautomatic pistol.  *See* diagram, *supra*.  He then positioned himself behind a white Suburban parked next to his car.  In the time that it took Appellant to get his gun, Mr. SoRelle made his way to his red Suburban that was blocking the driveway.  *See id*.  The two were now in a standoff in the common parking area of the property with a distance of roughly twenty-five feet between them.

[¶10] According to Appellant, the two began yelling at each other.[3]  Haire asked whether SoRelle was going to move the obstructing vehicle.  He testified that he then saw a glimmer from SoRelle's revolver as SoRelle raised his arm.  At that point, Haire testified that he took aim and fired one shot.  SoRelle again raised his revolver, and Haire began firing, emptying the magazine of the remaining eleven rounds.  Nine of the twelve bullets fired hit SoRelle, mortally wounding him.

[¶11] A neighbor testified that she heard one initial shot followed by a significant break before the other succession of shots were fired.[4]  However, Haire's wife testified that she heard two shots, then a slight pause, and then the remaining shots in rapid succession.

[¶12] After the shooting stopped, Mrs. Haire came outside and saw Appellant standing with his pistol in hand.  He told her to call 911.  Appellant then approached Mr. SoRelle and removed the revolver from his hand and placed it on the hood of a vehicle a safe distance away.

[¶13] Police and paramedics arrived shortly thereafter.  Mr. SoRelle died at the scene with the keys to his red Suburban laying next to his body.  Appellant was taken into custody by law enforcement.

---

[2] Testing on a blood sample taken post-mortem revealed a blood alcohol content of .213%, which a pathologist testified would be consistent with a very significant level of intoxication.
[3] Appellant elected to waive his Fifth Amendment right and testified at trial.  His statements during interviews with law enforcement shortly after the incident were also admitted into evidence.
[4] In its brief, the State says that "[a] neighbor who heard the shots, however, testified that there was no gap, and all shots were fired in quick succession."  That is not accurate based upon the record.

3

[¶14] The county attorney charged Appellant with involuntary manslaughter and reckless endangerment. The involuntary manslaughter statute states in pertinent part:

> a) A person is guilty of manslaughter if he unlawfully kills any human being without malice, expressed or implied, either:
>
> \* \* \*
>
> (ii) Involuntarily, but recklessly . . . .

Wyo. Stat. Ann. § 6-2-105(a)(ii) (LexisNexis 2015). "Recklessly" is statutorily defined as follows:

> A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

Wyo. Stat. Ann. § 6-1-104(ix) (LexisNexis 2015). Appellant pled not guilty to the charges and was tried eight months later.

[¶15] Appellant's theory of the case was that he killed Mr. SoRelle in self-defense. The district court provided the jury with the following instructions reflecting his theory:

**Jury Instruction No. 15.1**

> Self-defense is an issue in this case. The burden is on the State to prove that the defendant did not act in self-defense. Unless the State proves beyond a reasonable doubt that the defendant did not act in self-defense, you shall find the defendant not guilty of the crime of involuntary manslaughter.

**Jury Instruction No. 27**

> Anthony Haire's theory of the case is that Anthony Haire had reasonable grounds to believe and actually did believe that he, his family or guest was [sic] in imminent danger of death or serious bodily harm from which Anthony Haire or his family could be saved only by using deadly force

4

against the aggressor. It is further Anthony Haire's contention that at no time was he the aggressor. If you find that Anthony Haire acted in self-defense of himself, his family or guest, and after consideration of all the evidence and all the jury instructions, then you should find him not guilty.

[¶16] The district court also provided additional instructions[5] on the law of self-defense, which we summarize for the sake of brevity:

- Explanation of justifiable homicide in self-defense when there are reasonable grounds to believe there is imminent danger of death or serious bodily harm;

- The right to arm to resist attack where there are reasonable grounds to believe that another will attack with such force as to endanger life or cause serious bodily injury;

- Even if there are reasonable grounds to believe there is imminent danger of death or serious bodily harm, a person must try to retreat rather than to take the life of the adversary if there was a convenient mode of retreat without increasing actual or apparent peril;[6]

- The right of self-defense ends when the danger ceases;

- Self-defense is not a justification after an adversary is disabled;

- Use of reasonable force is justified to defend another person against an attack by an aggressor when the person has reasonable grounds to believe that the other person is in imminent danger of harm;

- A person is considered an aggressor when there is some sort of physical aggression or threat of imminent use of force;

---

[5] All of these instructions on the law of self-defense are reflected in the most current version of the Wyoming Criminal Pattern Jury Instructions, Part 8 – Defenses (2014). We take this opportunity to note that the pattern jury instructions are very useful, but that they are not required to be given. They are occasionally wrong, like the one examined in the second issue below. *See Shull v. State,* 2017 WY 14, ¶ 25, 388 P.3d 763, 769 (Wyo. 2017); *United States v. Little,* 829 F.3d 1177 (10th Cir. 2016); *see also United States v. Lofton,* 776 F.2d 918, 922 (10th Cir. 1985) ("While pattern instructions provide valuable guidance to the trial courts, over-reliance may produce instructions unsuited to the particular case.").
[6] This instruction is at the center of Appellant's second issue, and is discussed in detail below. *See infra* ¶¶ 31-45.

- The right of self-defense is not available to an aggressor who provokes the conflict, unless the aggressor withdraws in good faith and informs the other person by words or actions that he desires to end the conflict and is thereafter threatened.

[¶17]  Appellant proposed an instruction on the castle doctrine, claiming that he had an absolute right to stand his ground and was under no obligation to retreat even if he could safely have done so. *See infra* ¶ 26.  The district court rejected the instruction because it concluded that the circumstances did not warrant it.  The court also believed the instruction would be confusing because it did not fit the facts of this particular case.

[¶18]  After a four-day trial, the jury found Appellant guilty on both counts.  The district court sentenced him to eight to ten years of imprisonment for manslaughter, and to one year in the county jail for reckless endangerment,[7] the latter sentence to run consecutively and be suspended in favor of probation after he is released from prison.

[¶19]  Appellant timely perfected this appeal.

## DISCUSSION

### *Self-Defense and Crimes Involving Reckless Conduct*

[¶20]  It does not appear that the parties or the district court were aware of our holding in *Duran v. State*, in which we concluded that the justification of self-defense is not available when the crime charged involves a reckless act, rather than an intentional act. 990 P.2d at 1008-09.  If they had been, there likely would have been no instructions given to the jury regarding self-defense.  We now have an opportunity to revisit this issue.

[¶21]  In *Duran*, the defendant was charged with and convicted of aggravated vehicular homicide by vehicle, a crime only requiring reckless conduct rather than an intentional act. *Id.* at 1007; *see also Barrowes v. State*, 2017 WY 23, ¶¶ 17-18, 390 P.3d 1126, 1128-29 (Wyo. 2017).  After considering earlier Wyoming cases not directly resolving the issue and relying on limited authority from other jurisdictions, we determined that self-defense is available only when the crime charged requires intentional misconduct. *Duran*, 990 P.2d at 1009.  Consequently, the blanket rule in *Duran* was that self-defense is not available when a crime involves a reckless act. *Id.* at 1006.

[¶22]  *Duran* has proven to be one of those rare cases where we must depart from our precedent.  The rule of law set out there is unworkable and would lead to perverse results. Take for example the case of a defendant who justifiably shoots and kills his attacker in

---

[7] This charge alleged endangerment of persons travelling on the nearby highway.  The conviction and sentence for reckless endangerment were not appealed.

self-defense and is charged with murder. In such a scenario, the defendant could be entitled to a complete acquittal of the murder charge based on the justification of self-defense. However, another defendant who also justifiably shoots and kills his attacker in self-defense but is charged with involuntary manslaughter would have no defense. We cannot accept this incongruous result. Consequently, we must overrule *Duran's* holding that the affirmative defense of self-defense is not available when a crime involves a reckless act.

[¶23] We are cognizant of the doctrine of *stare decisis*, which ensures the law will not simply change on a whim. *Wilkerson v. State*, 2014 WY 136, ¶ 22, 336 P.3d 1188, 1198 (Wyo. 2014). "That doctrine permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact." *Id.* (citation omitted). There are exceptional times, however, when controlling decisions are unworkable or badly reasoned; thus, *stare decisis* cannot be applied blindly and unbendingly. *Id.*

[¶24] After studying the law of self-defense, we are convinced that the defense of self-defense is available when the crime charged involves a reckless act, just as it is available when an intentional act is involved. *See, e.g., State v. Rodriguez*, 949 A.2d 197, 203 (N.J. 2008); *Clark v. State*, 65 A.3d 571, 577-581 (Del. 2013); *Alonzo v. State*, 353 S.W.3d 778, 781-82 (Tex. Crim. App. 2011); *Jones v. State*, 745 A.2d 396, 402-07 (Md. 2000); *Estep v. Com.*, 64 S.W.3d 805, 811 (Ky. 2002); *cf.* 2 Wayne R. LaFave, *Subst. Crim. L.* § 10.4 (2d ed., Oct. 2016 update).[8] Whether a defendant is entitled to have the

---

[8] We are aware that some courts, such as the Colorado Supreme Court, consider the defense of self-defense in two separate ways, depending on the criminal charge. *See, e.g. People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011). "There are, generally speaking, two types of defenses to criminal charges: (1) 'affirmative' defenses that admit the defendant's commission of the elements of the charged act, but seek to justify, excuse, or mitigate the commission of the act; and (2) 'traverses' that effectively refute the possibility that the defendant committed the charged act by negating an element of the act." *Id.* "With respect to crimes requiring intent, knowledge, or willfulness, such as second-degree murder, self-defense is an affirmative defense." *Id.* "With respect to crimes requiring recklessness, criminal negligence, or extreme indifference, such as reckless manslaughter, self-defense is not an affirmative defense, but rather an element-negating traverse." *Id.* at 556.

This approach no doubt may have technical merit. However, we deem it unnecessary to parse self-defense in such a way. Instructing a jury on this distinction would be difficult in practice. We fear it would create confusion when there are multiple counts that encompass both intentional and reckless acts, and that it would cause uncertainty as to who bears the burden of proof depending on whether it is an "affirmative" defense or a traverse. Therefore, we elect to apply a simple straightforward approach; that is, the district court should give self-defense instructions when there is competent evidence which supports the law expressed in the instructions, regardless of the crime charged. The initial burden of making a *prima facie* case that he acted in self-defense rests with the defendant. When that minimal burden is satisfied, the State has the burden of proving beyond a reasonable doubt that the defendant did

jury instructed on a theory of self-defense and given related instructions should not depend on the charges chosen by the prosecutor; rather, the district court ought to provide such instructions when it decides there is competent evidence which supports the law expressed in the instructions. We have explained:

> A defendant has the right to have instructions on his theory of the case or his theory of defense presented to the jury if the instructions sufficiently inform the jury of the theory of defense and if competent evidence exists which supports the law expressed in the instructions. However, we have also noted that not every instruction must be given simply because there is a claim that it incorporates a theory of the case. A trial court may properly refuse to give a proposed instruction if it is erroneous, confusing, argumentative, or if the instruction unduly emphasizes one aspect of the case, the law, or the defendant's version of the events. Additionally, instructions not based on the evidence can be properly refused.

*Drennen v. State*, 2013 WY 118, ¶ 20, 311 P.3d 116, 124 (Wyo. 2013) (citations and quotation marks omitted).

[¶25] "[T]he right to defend oneself and the amount and type of force which may be used depend upon what is reasonably necessary under the circumstances." *Id*. ¶ 22, 311 P.3d at 124-25. The initial burden of making a *prima facie* case rests with the defendant that he acted in self-defense. *Id.* When "that minimal burden is satisfied, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, and the jury must be instructed accordingly." *Id.* As long as a self-defense instruction is requested and supported by competent evidence, the district court must instruct the jury accordingly, regardless if the crime charged requires reckless or intentional conduct. *Id.; see also Rodriguez*, 949 A.2d at 203; *Jones*, 745 A.2d at 405-07.

### *Rejection of Appellant's Proposed Jury Instruction*

[¶26] We now turn to the issues raised by Appellant. He first contends that the district court erred by not giving his proposed instruction on what is commonly known as the "castle doctrine." The proposed instruction[9] states:

### 8.07 No Duty to Retreat at Own Residence

---

not act in self-defense. In cases where there is no evidence of self-defense, the jury will not be instructed on it.

[9] Appellant's proposed instruction is identical to 2014 Wyoming Criminal Pattern Jury Instruction 8.07.

> If the defendant at his place of residence had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm and that the use of deadly force was necessary to repel such danger, he was not required to retreat or to consider whether he could safely retreat. The defendant was entitled to stand his ground and use such force as was reasonably necessary under the circumstances to save his life or protect himself from serious bodily harm.

[¶27] Appellant argues that he was denied an opportunity to present his theory of defense. If that were the case, our standard of review would be *de novo*. *See Tingey v. State*, 2017 WY 5, ¶ 27, 387 P.3d 1170, 1178 (Wyo. 2017) ("[F]ailure to give an offered instruction on the law related to a theory of defense is a due process issue, which this Court reviews *de novo*."). However, as indicated above, the district court did provide a theory of defense instruction along with numerous self-defense instructions. *See supra* ¶¶ 15-16. Thus, Appellant's theory of defense was clearly conveyed to the jury. *See supra* ¶ 24; *see also Bruce v. State*, 2015 WY 46, ¶ 79, 346 P.3d 909, 932 (Wyo. 2015); *Nelson v. State*, 2010 WY 159, ¶ 14, 245 P.3d 282, 285-86 (Wyo. 2010); *Iseli v. State*, 2007 WY 102, ¶ 9, 160 P.3d 1133, 1135-36 (Wyo. 2007).

[¶28] Because Appellant's first issue does not involve failure to instruct on the law governing his theory of defense, we will review the refusal to give the requested instruction using our general standard. *See Ewing v. State*, 2007 WY 78, ¶ 7, 157 P.3d 943, 945 (Wyo. 2007); *see also Tingey*, ¶ 40, 387 P.3d at 1181. A district court's decision to give or not give a proposed jury instruction is reviewed for an abuse of discretion, affording that decision significant deference. *Gonzalez-Ochoa v. State*, 2014 WY 14, ¶ 18, 317 P.3d 599, 604-05 (Wyo. 2014). Because the district court is given broad discretion in instructing the jury, we will not reverse if the instructions correctly state the law and collectively cover the relevant issue. *Id*.; *see also Marfil v. State*, 2016 WY 12, ¶ 17, 366 P.3d 969, 973 (Wyo. 2016).

[¶29] The location of the shooting is at the heart of this issue. Had Appellant used deadly force in his home, an instruction explaining that he had no duty to retreat even if he could safely have done so would have been proper. *See Drennen*, ¶ 24 n.4, 311 P.3d at 125 n.4 ("This rule is known as the castle doctrine because a man's home is his castle and he has the right to defend his family and himself therein."). We held long ago in *Palmer v. State* that an individual who is in his own home can stand his ground and need not retreat before killing his assailant if he is attacked with sufficient force. 9 Wyo. 40, 59 P. 793 (1900); *see also Drennen*, ¶ 24 n.4, 311 P.3d at 125 n.4.

9

[¶30] However, the shooting in this case occurred in a common parking area on SoRelle's property, which was outside the scope of Appellant's home and its curtilage.[10] *Cf. Knospler v. State*, 2016 WY 1, ¶¶ 21-24, 366 P.3d 479, 485 (Wyo. 2016). In fact, Mr. SoRelle was near the property line next to the highway when he was shot. Appellant's proposed jury instruction simply did not apply to the circumstances of this case, and the district court also correctly concluded that it could confuse the jury. *Cf. Bruce*, ¶ 85, 346 P.3d at 934. Consequently, we find no abuse of discretion in rejecting Appellant's proposed instruction.

### *Instruction on Duty to Retreat*

[¶31] Appellant asserts that the district court committed plain error[11] when it gave the following instruction to the jury:

### DUTY TO RETREAT

Even if the defendant had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, the defendant was justified in using deadly force to repel the danger only if he retreated as far as he safely could do before using deadly force. The law requires a person to retreat rather than to take the life of an adversary if there was a convenient mode of retreat without increasing his actual or apparent peril. To excuse a failure to retreat, it is necessary that the defendant's peril would be increased, or that it reasonably appeared that it would be increased, by retreat. If you find that the defendant could have safely retreated but failed to do so, the defendant cannot rely on the justification of self-defense.

[¶32] To prevail on his claim of plain error, Appellant must prove: "(1) the record clearly reflects the alleged error; (2) the existence of a clear and unequivocal rule of law; (3) a clear and obvious transgression of that rule of law; and (4) the error adversely affected a substantial right resulting in material prejudice to him." *Snow v. State*, 2009 WY 117, ¶ 13, 216 P.3d 505, 509 (Wyo. 2009); *see also Tingey*, ¶ 27, 387 P.3d at 1178.

---

[10] This Court's holding in *Palmer* confined the castle doctrine to the use of deadly force within the walls of the home. The circumstances of this case do not require us to consider whether the castle doctrine extends to the home's curtilage, as the incident happened in an area clearly outside that sphere. *See Drennen*, ¶ 24 n.4, 311 P.3d at 125 n.4. Curtilage has been described as "[t]he land or yard adjoining a house." Black's Law Dictionary 466 (10th ed. 2014).

[11] Appellant did not object to this instruction being given to the jury; as a result, our review is confined to an exploration for plain error. *Dennis v. State*, 2013 WY 67, ¶ 42, 302 P.3d 890, 899 (Wyo. 2013).

The first hurdle is easily satisfied, as the record clearly reflects the alleged error; that is, there is no doubt the district court gave the instruction in question to the jury.

[¶33] Moving on to the second requirement, existence of a clear and unequivocal rule of law, the answer is found in *Drennen*. In that case, we explained that when the use of deadly force is in play,

> it is not necessary for a person to resort to deadly force if there are other reasonable alternatives available to him, one of which may be to retreat. This does not impose an absolute duty of retreat; it only requires that a person avoid using deadly force against another if there is a reasonable alternative available to him.

*Drennen*, ¶ 36, 311 P.3d at 129. We then explained how the jury should be instructed:

> In all cases, the jury should be instructed that the defendant was justified in using deadly force only if necessary; consequently, he must consider reasonable alternatives, which may include retreat, before using deadly force.

*Id.* ¶ 39, 311 P.3d at 129-30.

[¶34] Based upon this rule, we found that the duty to retreat instruction given in *Drennen* was wrong, and we reversed. The instruction there stated:

> Even if the defendant had reasonable ground[s] to believe and actually did believe that he was in imminent danger of death or serious bodily harm, the defendant was justified in using deadly force to repel the danger only if he retreated as far as he safely could do before using deadly force. The law requires a person to retreat rather than to take the life of an adversary if there was a convenient mode of retreat without increasing his actual or apparent peril. To excuse a failure to retreat, it is necessary that the defendant's peril would be increased, or that it reasonably appeared that it would be increased, by retreat. If you find that the defendant could have safely retreated but failed to do so, the defendant cannot rely on the justification of self-defense.

*Drennen*, ¶ 37, 311 P.3d at 129. We found that this instruction was incorrect because it "informed the jury that the defendant was required to retreat before using deadly force."

11

*Id.* ¶ 37-39, 311 P.3d at 129-30. This was a clear and unequivocal rule of law by the time this case was tried.[12]

[¶35]   Turning to the third tine, we find that giving the challenged instruction was a clear transgression of the law set forth in *Drennen*. That is because the instruction is identical to the one found to be erroneous in *Drennen*. Compounding the confusion is the fact that the current 2014 Wyoming Criminal Pattern Jury Instruction 8.08 also mirrors the instruction we found to be erroneous in *Drennen*.

[¶36]   To be clear, this Court explained in *Drennen* that a person has a duty to pursue reasonable alternatives prior to using deadly force and one of those reasonable alternatives may be the duty to retreat. *Id.* ¶ 39, 311 P.3d at 129-30. Put another way, there is no need to resort to deadly force if there are other reasonable alternatives available, one of which may be to retreat. *Id.* However, there is no absolute duty of retreat; rather, the law requires that a person avoid using deadly force if there is a reasonable way to steer clear of it. *Id.* Of course, when a person is the aggressor, he has "a duty to withdraw or retreat before he could claim the right to self-defense." *Id.* ¶ 39, 311 P.3d at 129. We reiterate the rules of law elucidated in *Drennen*:

- Before the self-defense issue is presented to the jury, the defendant must make a *prima facie* case of each element of the affirmative defense. If the defendant meets that minimal threshold, the State then has the burden of proving the defendant did not act in self-defense;

- In *all* cases the jury should be instructed that the defendant was justified in using deadly force only if necessary; consequently, he must consider reasonable alternatives before using deadly force. This is the instruction that should have been given in *Drennen* and this case, and it ought to replace the errant instruction in Wyoming Criminal Pattern Jury Instruction 8.08;

- In cases in which the evidence establishes, as a matter of law, the defendant was not the aggressor, the jury should be only given the instruction above;

- When the evidence is insufficient to establish as a matter of law that the defendant was not the aggressor, but he has met the minimal burden of presenting a *prima facie* case that the deceased was the aggressor, the district court must instruct the jury on the legal definition of "aggressor." The jury should then be instructed that if it determines the defendant was the aggressor, he had a duty to withdraw or retreat before he could claim the right to self-defense. The right of self-defense is not available to an aggressor who provokes the conflict, unless the aggressor

---

[12]*Drennen* was decided on October 1, 2013. This case was tried over two years later, in December of 2015.

withdraws in good faith and informs the other person by words or actions of a desire to end the conflict and is thereafter pursued;

- If, on the other hand, the defendant has not made a *prima facie* case that the deceased was the aggressor, the jury should be instructed on the defendant's absolute duty to withdraw or retreat before self-defense will be recognized.

[¶37] By these standards, the proper instruction in this case would have been that generally the defendant is justified in using deadly force only if necessary, and thus he must consider reasonable alternatives, which may include retreat. There therefore is no doubt that there was a clear and obvious transgression of a rule of law, and as a result, the outcome turns on the fourth and final prong of the analysis.

[¶38] The final prong of the plain error test requires us to determine if the error adversely affected a substantial right and resulted in material prejudice to Appellant. *Snow,* ¶ 34, 216 P.3d at 516-17. "To establish prejudice, the appellant must show a reasonable probability that [he] would have received a more favorable verdict in the absence of the error." *Id.* (quoting *Pendleton v. State*, 2008 WY 36, ¶ 11, 180 P.3d 212, 216 (Wyo. 2008)). "In other words, focusing solely on an outcome determination is insufficient; the Court must also look at whether the result of the proceeding was fundamentally unfair or unreliable." *Id.* (internal quotation marks omitted).

[¶39] We find that material prejudice resulted from the wayward instruction, as there is a reasonable probability that Appellant would have received a more favorable verdict in the absence of the error. This is so because the prosecutor's emphasis on the duty to retreat and Appellant's testimony that he did not retreat before using deadly force.[13]

[¶40] The trial lasted roughly four days and the prosecution presented a good deal of evidence, including the recordings of Appellant's law enforcement interviews immediately after the incident. The prosecutor also presented testimony from several witnesses ranging from a neighbor to law enforcement officers that canvassed the scene. Appellant and his wife testified on his behalf and the case essentially came down to Appellant's testimony and the law on which the jury was instructed.

[¶41] Appellant testified that he did not go into his mobile home with his wife and Ms. Cable after Mr. SoRelle shot his revolver at them, because he had no form of protection in his home and did not feel safe going in there without any defense. The walls of the mobile home were thin and would likely not have repelled a round from a powerful handgun like SoRelle's. Appellant believed that if he had gone into the mobile home, he

---

[13] We cannot fault the prosecutor for emphasizing the law on which the jury was instructed. Indeed, it was his duty to apply the law as instructed and connect it to the facts presented to the jury. It just turns out that the rule of law stated was incorrect.

would have no way of protecting his wife, children, and friend. He also believed that calling 911 would not have provided adequate protection because it would have taken police so long to arrive that Mr. SoRelle could have killed everyone in the home if he decided to do so. Haire claimed that he believed he might have to use his weapon to protect his wife, children, friend, and himself, and thus he grabbed the pistol and positioned himself behind a vehicle. He fired when he thought SoRelle raised his pistol to shoot at him at close range.

[¶42] Throughout his cross-examination of Appellant, the prosecutor was able to get Haire to repeatedly admit that he did not retreat. By way of example, the following exchange occurred between Appellant and the prosecutor:

> Q. I asked you if you were standing with your gun at your side when you were yelling at Mr. SoRelle.
>
> A. Yes, my gun was down at my side.
>
> Q. That's just a yes or no, sir. You were?
>
> A. Yes.
>
> Q. Okay. Now, you've told us that he was yelling back at you.
>
> A. Correct.
>
> Q. And we've heard from your wife that she heard two people yelling.
>
> A. Correct.
>
> Q. Okay. Elevated voices, I think it was her term. Now, could you have gone backwards away from the white Suburban and avoided being shot at?
>
> A. Not in the amount of time that happened in.
>
> Q. How long did you and Mr. SoRelle yell at each other?
>
> A. Maybe 30 seconds.
>
> Q. Okay. So 30 seconds, you can travel quite a ways, can't you?

14

A. Sure.

Q. Okay. So if you'd have turned and gone backwards and run back away from there, you would have been out of sight, out of -- out of range, correct?

A. I could have also tripped trying to walk backwards and fallen on my back and been laying out there like an open turtle.

Q. Well, I guess anything's possible, but you did have an escape route?

A. Not in my mind.

Q. That isn't my question. You had an escape route?

A. And again, not in my mind.

Q. And you were aware of that because you were familiar with this property, correct?

A. Correct, I'm familiar with this property.

Q. And you decided -- correct me if I'm wrong. You had decided at that point in time that you had no intention of retreating, because you felt you needed to protect your family from this dangerous man.

A. I had retreated. I retreated to safe cover.

Q. Okay. Did you move anywhere away from Mr. SoRelle, or just perpendicular?

A. What do you mean?

Q. I mean, did you go backwards from him?

A. No. I was 30 feet away from him.

Q. Okay. You didn't –

15

A. No.

Q. You didn't go into the house, which would have been away from him, correct?

A. Correct.

Q. And you didn't go backwards from the white Suburban, which would have been away from him, correct?

A. Correct.

Q. You didn't duck down behind the Suburban, which would have been at least more cover for you, correct?

A. Yeah, I had no need to.

Q. You decided to stand your ground instead, right?

A. If that's how you want to say it.

[¶43] It is reasonable to conclude from the record that the jury, after being instructed on the law as it was, likely concluded that Appellant had a general legal duty to retreat and did not do so, and that therefore he did not have the right to use deadly force in self-defense or defense of his family and Ms. Cable. The duty to retreat became material to the case because of the Appellant's testimony and the prosecutor's use of that evidence as permitted by the errant instruction. Here are a few of the prosecutor's statements in closing argument about Appellant's general duty to retreat:

> Mr. Haire did nothing, nothing to retreat, according to any of his stories. The most he did was arm himself and advance to a defensive position.
>
> *     *     *
>
> Mr. Haire had plenty of ways to retreat safely. . . . He chose not to. So we go through each and every aspect of this evidence and we consider, was Mr. Haire ever an aggressor, and if so, he would have had to absolutely retreat. But the duty to retreat doesn't disappear no matter what, it does not go away. It just becomes a little different consideration if one is not the aggressor, and that's because the law still regards the most sacred thing, it protects a human life. So you still

16

have to – if you have any reasonable means of retreating without putting yourself in danger, you still have to do that.

* * *

You've now heard Mr. Haire's own words of saying that he had an opportunity to retreat. He chose not to. He should have gone inside. "I wish I would have gone inside."

* * *

If, instead, you find that he was not an aggressor, you still have to consider whether he reasonably had an opportunity to retreat and he did not do that. If you find that he reasonably had that opportunity, he still doesn't have that right of self-defense. And if he does not have that right of self-defense this homicide becomes a crime, and that crime is manslaughter and we have proven it.

[¶44] In sum, the error adversely affected a substantial right. There is a reasonable probability that, without the erroneous instruction, the jury could have reached a verdict more favorable to Appellant than it did. Consequently, we must find that Appellant has demonstrated that he was materially prejudiced.

[¶45] Reversed and remanded for a new trial on the charge of involuntary manslaughter.