# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 36

APRIL TERM, A.D. 2026

April 7, 2026

ANTHONY M. FUENTES,

Appellant
(Defendant),

v.

S-25-0004, S-25-0194

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Park County*
*The Honorable Bill Simpson, Judge*

*Representing Appellant:*
Office of the State Public Defender: Brandon T. Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Public Defender. Argument by Mr. Bennett.

*Representing Appellee:*
Keith G. Kautz, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ., and EAMES, D.J.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]    Anthony M. Fuentes was convicted of involuntary manslaughter as a result of an *Alford* plea[1] and was sentenced to 15 to 20 years in prison.  He filed a motion to withdraw his plea, claiming it was invalid because he received ineffective assistance of counsel.  The district court denied the motion.  We affirm.

### ISSUE

[¶2]    The sole issue is whether Mr. Fuentes was denied effective assistance of counsel.

### FACTS

[¶3]    The events leading to this appeal began with the death of Jordan Jackson from a fentanyl overdose.  Mr. Jackson ingested part of a counterfeit oxycodone pill.  The remnants of the ingested pill, along with another unused pill found on Mr. Jackson's nightstand, tested positive for fentanyl.  It was determined that Mr. Jackson's death was caused by fentanyl toxicity.  According to the Amended Felony Information, Mr. Fuentes sold the pills to Mr. Jackson.  The State charged Mr. Fuentes with one count of involuntary manslaughter, in violation of Wyo. Stat. Ann. § 6-2-105(a)(ii), and one count of conspiracy to deliver a controlled substance, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i).  Mr. Fuentes had a court appointed attorney but decided to hire a private attorney (hereinafter "trial counsel").  The representation agreement between Mr. Fuentes and trial counsel provided that Mr. Fuentes would pay an "initial fee" for the attorney's representation and would pay additional amounts for "all expenses incurred," including taking the case to trial and for "drafting, filing, or appearing at a hearing for any suppression motions."  Before trial counsel entered an appearance, Mr. Fuentes was informed that he could continue with his already-appointed public defender instead of entering into the representation agreement.[2]

### A.    Preliminary Hearing

[¶4]    Trial counsel entered an appearance and represented Mr. Fuentes at his preliminary hearing.  At the hearing, Wyoming Division of Criminal Investigation Agent Shane Reece testified that the autopsy confirmed Mr. Jackson died from fentanyl toxicity due to overdose.  He testified that Mr. Fuentes admitted purchasing pills in Denver and selling

---

[1] "An *Alford* plea involves the court's acceptance of the plea when the defendant simultaneously professes his innocence[.]" *Kruger v. State*, 2012 WY 2, ¶ 42, 268 P.3d 248, 256 (Wyo. 2012) (citing *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 168, 27 L.Ed.2d 162 (1970)).

[2] At the Rule 21 hearing, trial counsel was asked whether she told Mr. Fuentes he could "fire" her and proceed with a public defender.  She responded, "I do know that prior to me doing an entry of appearance, there was a discussion that the family and Mr. Fuentes would go forward with a public defender. . . . [O]riginally he was appointed a public defender in this matter."

two pills to Mr. Jackson the night before his death. He further testified that fentanyl is inherently dangerous and counterfeit pills contain unknown amounts of fentanyl. On cross-examination, Agent Reece acknowledged Mr. Fuentes did not say he knew the pills contained fentanyl, he sold only two pills to Mr. Jackson, and Mr. Jackson was a known drug user. Trial counsel argued the State failed to establish recklessness, an essential element of the involuntary manslaughter charge. The circuit court was unpersuaded. It found probable cause to believe that Mr. Fuentes committed the offenses charged— involuntary manslaughter and conspiracy to deliver a controlled substance. It concluded that a jury could reasonably determine recklessness for purposes of the manslaughter charge based on the evidence presented and bound the case over to the district court.

## B.     Arraignment

[¶5]    At the arraignment, the district court advised Mr. Fuentes of his right to "have an attorney represent [him] at every stage in these proceedings." The court told him, "[I]n the event your finances should dictate you're no longer able to pay private counsel, you could submit an affidavit of financial status. And if the Court deemed you were eligible, I would appoint . . . you a public defender to represent you." The court also advised him of his right to a trial, right to remain silent, and the State's burden of proof. It read the charges and affidavit of probable cause to Mr. Fuentes, who confirmed he understood them and had discussed them with trial counsel. Mr. Fuentes pleaded not guilty to both counts. He affirmed he was satisfied with trial counsel's representation and did not request appointment of a public defender.

## C.     Change of Plea

[¶6]    Several months later, pursuant to an oral plea agreement, Mr. Fuentes withdrew his not guilty plea and entered an *Alford* plea to involuntary manslaughter.[3] The State agreed to dismiss the conspiracy charge with prejudice, which in this case carried a potential sentence of up to 40 years.[4] The district court explained the effect of an *Alford* plea and

---

[3] The parties and the district court referred to Mr. Fuentes' entry of the *Alford* plea as a "cold plea." "The term 'cold plea' is generally used to mean a guilty plea entered without the benefit of a plea agreement." *Turner v. State*, 2014 WY 75, ¶ 21, 327 P.3d 100, 106 n.3 (Wyo. 2014) (citing *Cohee v. State*, 2005 WY 50, ¶ 10, 110 P.3d 267, 271 n.2 (Wyo. 2005)). Here, the parties and the district court used the term to mean there was no agreement as to sentencing.

[4] Mr. Fuentes was subject to a sentence enhancement pursuant to Wyo. Stat. Ann. § 35-7-1038, which provides "any person convicted of a second or subsequent offense under this act may be imprisoned for a term up to twice the term otherwise authorized." Wyo. Stat. Ann. § 35-7-1042 states that any "person who attempts or conspires to commit any offense under this article within the state of Wyoming . . . shall be punished by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense the commission of which was the object of the attempt or conspiracy." Wyo. Stat. Ann. § 35-7-1031(a)(i) prohibits the "manufacture, deliver[y], or possess[ion] with intent to manufacture or deliver, a controlled substance," except as authorized by the Wyoming Controlled Substances Act and provides for a sentence of "not more than twenty (20) years."

advised Mr. Fuentes of his rights and the rights he was waiving by entering a plea under W.R.Cr.P. 11, including waiver of his right to a jury trial. Mr. Fuentes confirmed he discussed the charge, evidence, and possible defenses with trial counsel and was satisfied with her representation. The parties agreed the court could rely on the affidavit of probable cause as the factual basis for the plea. The court accepted Mr. Fuentes' plea.

## D.    Sentencing Hearing

[¶7]    The district court sentenced Mr. Fuentes to 15 to 20 years in prison with credit for time served. The sentence did not exceed the 20-year statutory maximum for involuntary manslaughter. Wyo. Stat. Ann. § 6-2-105(b). Mr. Fuentes appealed.

## E.    Rule 21 Hearing

[¶8]    Mr. Fuentes next filed a motion to withdraw his *Alford* plea under W.R.A.P. 21, alleging ineffective assistance of counsel. He argued trial counsel allowed him to enter a plea to conduct that did not meet the statutory definition of involuntary manslaughter because their fee agreement focused on plea negotiations rather than a full defense. He also asserted trial counsel was ineffective for entering into a fee agreement "for the purposes of plea negotiations and [did] not [intend] to fully defend" Mr. Fuentes.

[¶9]    At the Rule 21 hearing, trial counsel testified her representation was limited to negotiating a plea agreement unless Mr. Fuentes made additional payment for motions or trial, which she knew he could not afford. She explained that she had reviewed the evidence and discussed the elements of the charged crimes with him. She did not identify specific motions she would have filed, had the fee agreement allowed for such motions. She testified that she did not discuss the preclusive effect of a guilty plea or counsel Mr. Fuentes on a conditional plea, and she did not discuss his option to terminate her representation and hire a public defender. She stated that she did discuss the *Alford* plea and what it entailed with Mr. Fuentes.[5] Trial counsel testified she felt she was effective in negotiating a plea deal for Mr. Fuentes but felt she could have done a better job if he had more money to pay for a full representation.

[¶10]  Mr. Fuentes testified he would not have pleaded guilty had he been advised by trial counsel that his conduct did not constitute manslaughter. However, his testimony was

---

[5] Trial counsel testified as follows:

> [Trial counsel:] He . . . had pled an *Alford* plea, claiming innocence, but accepting the jurisdiction and the sentence of the Court.
> [State's counsel:] Still treated as a guilty plea, correct?
> [Trial counsel:] Still treated the same, yes.
> [State's counsel:] Okay. And you had those conversations with Mr. Fuentes, I assume, what the *Alford* plea entailed?
> [Trial counsel:] Correct.

3

inconsistent with trial counsel's in terms of what they discussed about the elements of manslaughter and his right to proceed to trial.

[¶11]  The State responded that trial counsel had negotiated a favorable plea agreement avoiding the possibility that Mr. Fuentes might receive an additional 40 years in prison on the conspiracy charge, that it had presented a sufficient factual basis for manslaughter, that Mr. Fuentes' reckless conduct caused Mr. Jackson's death, and that the *Alford* plea was knowing and voluntary.

[¶12]  After argument, the district court made oral findings.  It found the fee agreement did not "substantially interfere[,] hinder[,] or block[]" trial counsel's judgment and trial counsel satisfied her "duty and responsibility to vigorously and aggressively represent" Mr. Fuentes.  It also found trial counsel "did an excellent job in arguing and advocating on behalf of Mr. Fuentes" at the sentencing hearing.  It remarked that trial counsel negotiated a plea bargain that avoided the potential of an additional 40-year sentence by obtaining the dismissal of the conspiracy charge and found Mr. Fuentes made a knowing and voluntary decision to enter his *Alford* plea to involuntary manslaughter and trial counsel was effective.  The district court denied the motion orally, followed by a written order.

## *STANDARD OF REVIEW*

[¶13]  We review a district court's denial of a post-sentence motion to withdraw a guilty plea for an abuse of discretion.  *Palmer v. State*, 2008 WY 7, ¶ 11, 174 P.3d 1298, 1301 (Wyo. 2008) (citation omitted).  "A court abuses its discretion only when it could not reasonably decide as it did."  *Berger v. State*, 2017 WY 90, ¶ 7, 399 P.3d 621, 623 (Wyo. 2017) (citing *Venard v. Jackson Hole Paragliding, LLC*, 2013 WY 8, ¶ 6, 292 P.3d 165, 168 (Wyo. 2013)).  "To determine whether the district court could reasonably deny [Mr. Fuentes'] motion, we must review its determination that [trial] counsel was not ineffective."  *Id.*  Our standard of review in effective assistance of counsel claims is well-established:

> "Ineffective assistance of counsel claims 'involve mixed questions of law and fact.'" *Jendresen v. State*, 2021 WY 82, ¶ 36, 491 P.3d 273, 284 (Wyo. 2021) (quoting *Sides v. State*, 2021 WY 42, ¶ 34, 483 P.3d 128, 137 (Wyo. 2021)).  "We review the district court's findings of fact for clear error and its conclusions of law de novo." *Id.*

*Little v. State*, 2024 WY 78, ¶ 17, 552 P.3d 385, 389 (Wyo. 2024) (quoting *Bolen v. State*, 2024 WY 48, ¶ 32, 547 P.3d 961, 968 (Wyo. 2024)).  *See also Mellott v. State*, 2019 WY 23, ¶ 11, 435 P.3d 376, 381–82 (Wyo. 2019) ("The district court's order denying Ms. Mellott's W.R.A.P. 21 motion [to withdraw her guilty pleas due to ineffective assistance of trial counsel] involves mixed questions of law and fact.  The district court's conclusions

4

of law, which include the question of whether counsel's conduct was deficient and the question of whether the appellant was prejudiced by that deficient conduct, are reviewed *de novo*. However, [w]e defer to the district court's findings of fact unless they are clearly erroneous." (citations and quotation marks omitted)).

## *DISCUSSION*

[¶14] Mr. Fuentes argues the district court erred by denying his request to withdraw his *Alford* plea because trial counsel, constrained by the terms of their fee agreement, was ineffective and, as a result, his plea was not entered knowingly and voluntarily.[6] Mr. Fuentes' argument turns on whether trial counsel was ineffective.

[¶15] To prevail on his claim of ineffective assistance of counsel, Mr. Fuentes must show (1) that trial counsel's performance was deficient and (2) he was prejudiced by the deficient performance. *Mellott*, ¶ 25, 435 P.3d at 385 (citing *Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674 (1984)).

> A criminal defendant has the right to effective assistance of counsel. *Buckingham v. State*, 2022 WY 99, ¶ 25, 515 P.3d 615, 619 (Wyo. 2022) (citing U.S. Const. amend. VI; Wyo. Const., art. 1, § 10; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984)). To succeed on a claim of ineffectiveness, a defendant "must show <u>both</u> that counsel's performance was deficient, and he was prejudiced as a result." *Buckingham*, 2022 WY 99, ¶ 25, 515 P.3d at 619 (quoting *Steplock v. State*, 2022 WY 12, ¶ 20, 502 P.3d 930, 936 (Wyo. 2022)). Counsel acts deficiently when he "fails to render such assistance as would have been offered by a reasonably competent attorney." *Steplock*, 2022 WY 12, ¶ 20, 502 P.3d at 936–37 (quoting *Neidlinger v. State*, 2021 WY 39, ¶ 53, 482 P.3d 337, 351–52 (Wyo. 2021)). "Prejudice occurs when there is 'a reasonable probability that, absent counsel's deficient assistance, the outcome of appellant's trial would have been different.'" *Steplock*, 2022 WY 12, ¶ 20, 502

---

[6] The test for a valid guilty plea established by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) is whether the record establishes that a guilty plea was voluntarily and understandingly made. "Rule 11 [of the Wyoming Rules of Criminal Procedure] sets forth procedures 'for courts to use in determining that a defendant's plea is intelligent, knowing and voluntary and entered with an understanding of the consequences.'" *Sena v. State*, 2010 WY 93, ¶ 9, 233 P.3d 993, 996 (Wyo. 2010) (citation omitted). Mr. Fuentes does not claim the district court failed to follow the procedures outlined in Rule 11; he relies only on his allegation that trial counsel rendered ineffective assistance and therefore his *Alford* plea was not knowingly made.

*Little*, ¶ 17, 552 P.3d at 389–90 (quoting *Bolen*, ¶ 33, 547 P.3d at 968). "We 'evaluate[] counsel under the circumstances existing at the time of the challenged act or omission and from the perspective available at the time of the challenged act or omission.'" *Pickering v. State*, 2020 WY 66, ¶ 60, 464 P.3d 236, 256 (Wyo. 2020) (quoting *Larkins v. State*, 2018 WY 122, ¶ 62, 429 P.3d 28, 43 (Wyo. 2018)). "We invoke a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Id.* (quoting *Brock v. State*, 2012 WY 13, ¶ 10, 272 P.3d 933, 936 (Wyo. 2012)); citing *Duke v. State*, 2004 WY 120, ¶ 55, 99 P.3d 928, 947 (Wyo. 2004).

[¶16]  Mr. Fuentes presents five arguments in support of his contention that trial counsel's performance was deficient.  He asserts she (1) failed to challenge whether Mr. Fuentes' conduct was manslaughter, (2) did not discuss the preclusive effects of an *Alford* plea with him, (3) did not counsel him on the possibility of a conditional plea, (4) did not file any dispositive motions, and (5) never told him he could fire her and request a public defender. We address each argument.

## A.    Failure to Challenge Whether Mr. Fuentes' Conduct Could Establish Involuntary Manslaughter

[¶17]  Mr. Fuentes asserts trial counsel was ineffective because she "did not research and discuss the issue of whether Mr. Fuentes' conduct met the elements of [involuntary] [m]anslaughter."  In support of his argument, Mr. Fuentes cites trial counsel's Rule 21 hearing testimony that, despite her belief that Mr. Fuentes' conduct did not qualify as involuntary manslaughter and her general knowledge of its elements, she did not conduct any specific research into those elements.

[¶18]  At the preliminary hearing, the question of whether the State could establish that Mr. Fuentes committed involuntary manslaughter was at issue.  Wyo. Stat. Ann. § 6-2-105(a)(ii) provides that a person commits manslaughter when "he unlawfully kills any human being without malice, . . . (ii) Involuntarily, but recklessly except under circumstances constituting a violation of W.S. 6-2-106(b)."[7]  "Recklessly" is statutorily defined:

> A person acts recklessly when he **consciously disregards a substantial and unjustifiable risk** that the harm he is accused of causing will occur, and the harm results.  The risk shall be of such nature and degree that disregarding it constitutes **a**

---

[7] Wyo. Stat. Ann. § 6-2-106(b) describes the conduct that establishes aggravated homicide by vehicle and is not applicable here.

6

**gross deviation from the standard of conduct that a reasonable person would observe in the situation**[.]

Wyo. Stat. Ann. § 6-1-104(a)(ix) (LexisNexis 2025) (emphasis added); *see also Haire v. State*, 2017 WY 48, ¶ 14, 393 P.3d 1304, 1308 (Wyo. 2017). To prove Mr. Fuentes was guilty of involuntary manslaughter at trial, the State would have had to show he (1) acted recklessly and (2) his reckless conduct caused Mr. Jackson's death. *Haire*, ¶ 14, 393 P.3d at 1308.

[¶19] The question of whether Mr. Fuentes' alleged conduct was reckless was a focus for both the State and the defense at the preliminary hearing. The State introduced evidence from Agent Reece, who testified regarding his investigation of Mr. Jackson's death including discussions with Mr. Fuentes where Mr. Fuentes admitted to selling counterfeit oxycodone pills. The State argued Agent Reece's testimony established Mr. Fuentes' recklessness. The State pointed specifically to Agent Reece's testimony that Mr. Fuentes told him he did not keep the tablets in his home or near his kids, that Mr. Fuentes never corrected him when he referred to the tablets sold by Mr. Fuentes as "fentanyl tablets" and "counterfeit oxycodone," and that Mr. Fuentes knew his reference to "hot" tablets meant they contained fentanyl. The State argued Mr. Fuentes was aware of the dangers of the drugs he was selling and that he "consciously disregard[ed]" the risk that someone might die when he sold them to Mr. Jackson.

[¶20] Trial counsel vigorously objected to some of Agent Reece's testimony regarding the dangers of fentanyl, and her objections were sustained. On cross-examination, she obtained admissions from Agent Reece that Mr. Fuentes never stated he sold "fentanyl pills." She also elicited testimony from Agent Reece that the pills looked like oxycodone pills.

[¶21] Trial counsel argued that Mr. Fuentes should not be bound over to district court because the State had not established the recklessness element of manslaughter. She contended Mr. Fuentes did not "disregard[] a substantial and unjustifiable risk" by selling the tablets to Mr. Jackson, Mr. Jackson had used cocaine (in addition to the pill containing fentanyl) on the night of his death, and Mr. Fuentes had denied knowing there was fentanyl in the pills in a related Park County matter. She pointed out that the pills sold by Mr. Fuentes had not caused prior overdoses. Mr. Fuentes had only sold pills to Mr. Jackson on one prior occasion, and it is unknown whether the pill taken on the night of his death was one of the pills Mr. Fuentes sold Mr. Jackson. Trial counsel requested the court dismiss the involuntary manslaughter charge because the State could not prove Mr. Fuentes acted recklessly.

[¶22] The circuit court analyzed whether the State's evidence established probable cause that Mr. Fuentes committed involuntary manslaughter. It explained the question of recklessness is a factual question for a jury to decide by considering the evidence and

weighing it against the statutory definition of recklessness. It found a jury could determine Mr. Fuentes acted recklessly because he knew he was selling pills laced with fentanyl that posed an increased danger of overdose deaths, and this was shown by the fact that he would not keep the pills in his own home. The circuit court concluded Mr. Fuentes' alleged conduct could support a charge of involuntary manslaughter and transferred the case to the district court for further proceedings.

[¶23] Based upon this record, we find Mr. Fuentes' attorney adequately understood the elements of involuntary manslaughter and challenged those elements in a reasonably competent way. Mr. Fuentes has not overcome the presumption that his attorney provided reasonably competent professional assistance regarding researching, discussing, or challenging the elements of involuntary manslaughter. *See Mellott*, ¶ 26, 435 P.3d at 385.

## B. Failure to Advise on Preclusive Effect of Guilty Plea

[¶24] Mr. Fuentes argues his *Alford* plea was not knowing, as trial counsel failed to advise him it had preclusive effect on his ability to challenge certain issues on appeal. He relies on trial counsel's Rule 21 hearing testimony, where she acknowledged that she did not counsel him regarding a conditional plea or issues he would waive in the absence of a conditional plea.

[¶25] An *Alford* plea has the same preclusive effect as an ordinary guilty plea. *See State v. Fraley*, 876 S.E.2d 703, 704 (S.C. Ct. App. 2022) ("While *Alford* affords defendants the right to plead guilty when they cannot or will not admit their guilt, a guilty plea entered pursuant to *Alford* carries the same effect as a 'regular' guilty plea or a guilty verdict."); *see also North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970) ("[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual . . . may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

[¶26] While Mr. Fuentes may not have been advised as to the preclusive effect of his *Alford* plea by trial counsel, he was advised by the district court. The district court engaged in a lengthy explanation of *Alford* pleas, explained the difference between an *Alford* plea and a no contest plea, and addressed the preclusive effects of an *Alford* plea:

> THE COURT: All right. Well let me go through with you the terms and conditions of an *Alford* plea. Essentially with the *Alford* plea — this is somewhat detailed and the *Alford* plea can be confusing . . . .

The *Alford* plea does not require a factual basis. You need to understand that given the case law in Wyoming, the case of *Deborah McEwen v. State*, that the Wyoming Supreme Court has indicated that there appears to be oftentimes confusion between the nature of an *Alford* plea as compared to a no contest or nolo contendere plea.

As such, a no contest plea cannot be used against a defendant in other civil or criminal proceedings pursuant to Wyoming Rules of Evidence 803[(22)] and 410. A factual basis is not taken under oath from the defendant as in the case of a guilty plea . . . .

On the other hand, an *Alford* plea is a guilty plea as referenced by *North Carolina v. Alford*, [400 U.S. 25, 91 S.Ct. 160]. An *Alford* plea differs from a conventional guilty plea because you are denying your guilt and therefore you do not supply a satisfactory basis for the plea, but instead you seek to obtain the benefit of a plea bargain to avoid a potentially harsher sentence that you might receive if the matter goes to trial and you were convicted. Do you understand that . . . ?

MR. FUENTES: Yes, Your Honor.

THE COURT: **I'm also required to advise you that Court[s] considering the issue [have all held] that an *Alford* plea has the same preclusive effect in subsequent civil litigation as an ordinary guilty plea.** Reference *Zurcher*, Z-U-R-C-H-E-R *v. Bilton*, B-I-L-T-O-N[, 666 S.E.2d 224 (S.C. 2008)]. Also referenced *United States v.* [*In*, No. 2:09CR00070 DS, 2010 WL 2869108 (D. Utah July 20, 2010)].

. . . [A]s the defendant seeking to enter an *Alford* guilty plea . . . , you believe that the State can produce the evidence it claims it can produce, you understand that a conviction may be used against you in other proceedings, and you wish the Court to accept the guilty plea and impose [a] sentence in order to obtain more favorable treatment under a plea agreement than you might expect if the matter went to trial and there was a conviction.

9

> **So essentially, the *Alford* plea allows you as the accused to voluntarily, knowingly, and understandingly consent to the [im]position of a prison sentence even if you're unwilling or unable to admit your participation in the acts constituting the crime.** That is referenced in *Kurtenbach*, K-U-R-T-E-N-B-A-C-H *v. State*, [2008 WY 109,] 192 P.3d 973 [(Wyo. 2008)], referring again to *North Carolina v. Alford* . . . . Also referenced as *Joreski* J-O-R-E-S-K-I *v. State*, [2012 WY 143,] 288 P.3d 413 [(Wyo. 2012)].
>
> **I want you to understand this, Mr. Fuentes, because essentially you're going to be, I assume, saying you really didn't do it, but if you did do it, you think the State could prove it, you think the State has a strong case, and rather than take your chance [at] a trial, you're going to enter your plea.** You understand the essence of an *Alford* plea and the distinction between the *Alford* plea and a no contest plea?
>
> MR. FUENTES: Yes, Your Honor.

(Emphasis added.)

[¶27]  At the Rule 21 hearing, the district court found that Mr. Fuentes made a knowing and voluntary decision to enter an *Alford* plea, that he had affirmed he understood his rights, and that he wished to waive his rights by pleading guilty.

[¶28]  Regardless of whether Mr. Fuentes understood what the district court meant when it described the preclusive effect of an *Alford* plea, Mr. Fuentes does not identify the challenges he would have made in the district court or on appeal if trial counsel had informed him of the preclusive effect of his plea. Bald allegations that his attorney failed to inform him of the preclusive effect of his *Alford* plea do not establish counsel was ineffective. *See Duke*, ¶ 57, 99 P.3d at 948 ("purely conjectural allegations . . . do not support a claim of ineffective assistance of counsel"). As we explain below, an elemental challenge to the involuntary manslaughter charge was not available via a conditional plea. *Infra* ¶¶ 32–33. Mr. Fuentes has not established trial counsel was ineffective on this point.

## C.    Failure to File Dispositive Motions

[¶29] Mr. Fuentes contends trial counsel was deficient because she "never filed any dispositive motions although she should have." Mr. Fuentes does not identify what dispositive motions should have been filed or show how the failure to file any motions prejudiced him. Unsupported allegations that his attorney failed to file generic or

10

unidentified dispositive motions do not establish counsel was ineffective. *See Duke*, ¶ 57, 99 P.3d at 948.

[¶30] During the Rule 21 hearing, trial counsel testified she did not "file any dispositive motions to explore the legalities of [his] conduct being appropriate for a manslaughter or meeting the elements of manslaughter." To the extent that Mr. Fuentes is contending trial counsel should have filed a motion to challenge whether the State could prove the elements of the crime, we find no ineffective assistance. As explained below, the question of whether the defendant is actually guilty of the offense charged cannot be addressed via pretrial motion. *Infra* ¶¶ 32–33. Trial counsel was not required to file a motion or motions. Had Mr. Fuentes wanted to challenge the issue further, he could have taken the case to trial, which he declined to do. Instead, at the change of plea hearing, Mr. Fuentes confirmed that he understood his rights and voluntarily decided to enter an *Alford* plea and waive his right to a trial. *See supra* ¶¶ 6, 26–27.

## D.     Failure to Advise Regarding the Alternative of a Conditional Plea

[¶31] Mr. Fuentes argues trial counsel was ineffective because she failed to advise him that a conditional plea was necessary to preserve for appeal the issue of whether his conduct met the elements of manslaughter.

[¶32] W.R.Cr.P. 11(a)(2) provides conditional pleas are available "to seek review of the adverse determination of any specified pretrial motion." "W.R.Cr.P. 12(b) limits pretrial motions to a 'defense, objection, or request which is **capable of determination without the trial of the general issue** . . . .'" *Matthews v. State*, 2014 WY 54, ¶ 16, 322 P.3d 1279, 1281 (Wyo. 2014) (emphasis added). In other words, a defendant can enter a guilty plea while still reserving the right to appeal a particular pretrial decision, as outlined in W.R.Cr.P. 11. However, the question of whether the defendant is actually guilty of the offense charged cannot be addressed via a pretrial motion. A determination of guilt must be made by a factfinder, relying on the evidence introduced during the trial itself. *Id.* Because guilt cannot be challenged in a pretrial proceeding, it cannot be safeguarded for appeal using a conditional guilty plea.

[¶33] The general issue to be determined at trial here was whether Mr. Fuentes' conduct constituted manslaughter. Trial counsel could not reasonably have advised Mr. Fuentes to enter a conditional plea to preserve his challenge to the recklessness element, because that challenge is not eligible for review in a conditional plea. Trial counsel was not ineffective for failing to advise Mr. Fuentes regarding an unavailable conditional plea.

## E.     Failure to Advise Mr. Fuentes That He Could Obtain a Public Defender

[¶34] Mr. Fuentes claims trial counsel was ineffective because she did not tell him he could obtain a public defender. At the Rule 21 hearing, trial counsel testified she did not

11

discuss with him his ability to "fire" her and request a public defender. He implies that his decision to waive his right to a trial and plead guilty was motivated by financial constraints imposed by the limited representation agreement he had with trial counsel. We are not persuaded.

[¶35] The record shows Mr. Fuentes was aware he had the option of obtaining a public defender. Both the district court and trial counsel told him he could proceed to trial with a public defender. Significantly, before hiring trial counsel, Mr. Fuentes was represented by a public defender. At the Rule 21 hearing, trial counsel testified that before she entered an appearance, Mr. Fuentes was informed that he could continue with his already-appointed public defender instead of entering into the representation agreement. At the arraignment, the district court advised Mr. Fuentes of his right to "have an attorney represent [him] at every stage in these proceedings" and told him that "in the event your finances should dictate you're no longer able to pay private counsel, you could submit an affidavit of financial status." The district court informed Mr. Fuentes, if it found him eligible, it would appoint him a public defender. At the change of plea hearing, Mr. Fuentes confirmed that he understood his rights, voluntarily made the decision to plead guilty, and waived his right to a trial. As Mr. Fuentes proceeded with his trial counsel, he affirmed multiple times that he was satisfied with her representation. Mr. Fuentes was informed that he could obtain a public defender. We find no ineffective assistance.

## *CONCLUSION*

[¶36] Mr. Fuentes contends that the district court erred in denying his motion to withdraw his *Alford* plea because of the alleged ineffective assistance of trial counsel. Having found no merit to his contention that trial counsel rendered ineffective assistance, we conclude that the district court did not err in denying Mr. Fuentes' motion to withdraw his plea. Affirmed.